If it pleases the Court, I would like to start by addressing the issue of loss in this matter. I think that the parties down below were somewhat confused with regard to the issue. When Appellant filed his objections to the PSR, he stated in the objection that there was only evidence of loss with regard to the five substantive counts. It was correct that there was evidence of loss with regard to the five substantive counts, but it was also correct that there was other evidence introduced by the prosecution regarding loss. The prosecution witness, Agent Shirokian, gave specific testimony on direct examination, and his testimony there was that between him and another agent, they reviewed 14 claims for prescriptions. Of those 14 claims, he found only two of those needed a power wheelchair, and that's on page 914 of the record. Then he specifically goes on to state, I personally observed the beneficiaries, I spoke with them, I visited their house, and I looked at their paperwork. So it appears from the record that it's clear that 14 of these claims were examined, that two of the claims were valid. After Appellant filed his sentencing memorandum and said that there was no evidence that there were claims looked at for the other doctors, and he mistakenly said orally 50 doctors when there were another 22 doctors, not 50. The prosecution filed its response, and in that response, the prosecution stated that there was no evidence that any of the prescriptions were fraudulent, and that's on their submission in document 118, and that's on page 4 of their submission. They were incorrect in that assertion, but that was the assertion that the judge heard at sentencing, and they were incorrect because they may have forgotten, they may have overlooked, but it was clear that the testimony was two out of the 14 prescriptions that were looked at were valid, and that people were interviewed and paperwork was checked. At the hearing on the motion for sentencing with regard to loss, plaintiff again raised the amount of loss, or a loss, and stated at that hearing again that there was no evidence with regard to any of the prescriptions being valid, and again, that ignored the trial testimony that two of them were invalid. At that point in time, appellant's attorney had only argued with regard to one issue to start with. They had not yet got into the issue of the amount of the loss. Plaintiff took a lot of time arguing with regard to loss. The district court judge listened to a lot of what they said, pointed out items in the loss calculation at the PSR of being an intended loss, an actual loss of $615,000. And isn't that the point that the argument, at least, is that you have intended loss? Correct. And the standard is different, right? It's a preponderance standard. It's not beyond a reasonable doubt. So isn't that sufficient? I don't believe that it is, and I don't believe that it is for several reasons. Number one, there was no explicit testimony at trial regarding any of the, quote, other 22 doctors that had prescribed power chairs. The only testimony at the trial was generally directed towards the five witnesses and then other prescriptions by those five doctors. It is conceivable that there was evidence that was introduced, but it was not directly introduced and identified as being wheelchairs prescribed by the 22 doctors that weren't named as part of the conspiracy. So right off the top, we've got $615,000 worth of loss found by probation, and that included all power wheelchairs. Approximately 48% of the power wheelchairs were by those other 22 doctors. The remaining 52 were the doctors that were named in the indictment that were litigated at trial. So off the top, we have almost 50% of the intended loss with, at best, no evidence or a percentage evidence of two out of 14 being valid. I think that what happened at sentencing is that there was a very extended discussion between plaintiff and the trial court with regard to intended loss, and my best guess from reading the transcript is that the trial court got distracted on the discussion about intended loss and didn't realize that he was being told a different version of the truth of there being no evidence at trial regarding valid prescriptions because the trial judge absolutely recognized that there were two contingents of doctors. There were the identified doctors and there were the 22 other doctors because when counsel below at sentencing brought up the position, the argument that, well, there was no evidence about these other doctors, and he mistakenly said 50 instead of 22, but when he said there was no evidence of these doctors, the judge essentially agreed with that because the judge said, well, I certainly hope they all weren't fraudulent. So if the judge is right that they all aren't fraudulent, they based the loss calculation, the intended loss of $615,000 was for every wheelchair prescription. If the trial judge was correct when he stated, I certainly hope they all aren't fraudulent, that would have divided right off the top the amount of the loss, only 52% of it would have been valid and that would have taken down in the brief. I said I believe $287,000 or somewhere in that area. That is a significant number because that changes the guideline range by two points. It's also significant on restitution. I understand that appellant has a more difficult argument on the issue of restitution because it is clear that there was no specific objection down below to the amount of restitution as opposed to there being an objection to the amount of loss, and that objection that related to loss was both to intended loss and actual loss. The parties sort of agreed on actual loss, plaintiff disagreed on intended loss, and the court resolved intended loss as being actual loss based upon all of the documentation found in the appellant's possession that showed they knew about Medicare. I see that I'm getting close. If there are issues other than those I've addressed, I would be pleased to attempt to address them to the court. Well, you've preserved all of your arguments because you raised them in the brief. So if you want to reserve this time for rebuttal. Yes. Thank you. May it please the Court. Elizabeth Dinello for the United States. Good morning. Good morning. On this issue of loss, the district court did not err in calculating the offense level under the guidelines. The district court reasonably could find by a preponderance of the evidence that all of the claims submitted to Medicare for the power wheelchairs and accessories were fraudulent. They all came from a company that itself was fraudulent from the get-go. As you will recall, JC Medical was founded and named under the name of the wife of Mr. Chernovsky. The evidence made clear that Medicare requires that enrollment applications be accurate, and the defendants knew that from Government Exhibit 4, which was the enrollment certification. And indeed, the whole purpose of founding JC Medical was to defraud Medicare, was to file fraudulent power wheelchair claims. Furthermore, the evidence showed that the co-conspirators paid kickbacks. They used marketers. They paid kickbacks for the prescriptions. And again, the evidence shows that Medicare would not have paid for those claims if there were kickbacks. Could the district court just ignore the evidence from the trial that seemed to indicate that two of the claims were, in fact, valid, even if everything else was fraudulent? You had two that were, in fact, valid. Can he just ignore that? Well, first, Your Honor, that was not a fact or a claim that was teed up for the district court at sentencing. Chernovsky did not mention the testimony of Agent Siakon about the two out of the 14. Furthermore, if I may clarify, the witness did not testify that two of the 14 claims were valid. What he said was that two of the 14 beneficiaries that he and Agent Coleman had interviewed needed power wheelchairs. Well, putting aside the issue of we don't even know the timing when those interviews were conducted relative to when the prescriptions were filed, even if two of the 14 beneficiaries actually needed wheelchairs, the agent also testified that of the beneficiaries he interviewed, he saw homes that were unsuitable. He saw wheelchairs that were sitting unused. He was aware of wheelchairs not even being delivered. Furthermore, the patient files show that there were chronic problems with misstatements, with omissions, and in order for a claim to be valid, the patient file needs to be complete. So even if the district court believed that two of the 14 chairs were medically necessary, that still doesn't overcome all the evidence that this scheme was fraudulent overall and that Medicare would not have played a penny had it been aware of all the defects in the program. And remember that... Counsel on that last point, but would it affect the loss amount for purposes of sentencing if a couple of chairs were not fraudulent? It would if the chairs were medically necessary and they were delivered and the home assessment was done and the company itself was properly certified as a Medicare provider. Yes, if all those factors were satisfied, then that would affect the loss for sentencing. But unfortunately here, none of those other factors were satisfied. The evidence showed that we have a company that was not properly a Medicare provider. We have a company that was regularly paying kickbacks. Person testified at page 229 that when a company uses marketers, Medicare does not pay those claims, yet marketers were used throughout. So again, even if they were medically necessary, that would not be enough to show that the loss here fell below the 550 level for the 14 level enhancement that the district court properly applied. And with respect to restitution... Can I ask you just one other question? What is the value of each wheelchair? How much did Medicare reimburse for each wheelchair? The testimony was they reimbursed between $4,000 and $5,000 per wheelchair. The cost to Chernofsky was $900 to $1,000. So that was one of the reasons this was a particularly lucrative form of fraud. And with respect to restitution, counsel has acknowledged that restitution was not objected to in the district court, so the review, of course, would be for plain error. Restitution looks at actual loss. The discussion in the district court was with respect to intended loss. So appellants or appellant cannot show that the restitution here, the actual loss, was obviously erroneous, and therefore that claim should be rejected as well. Does the court have any questions, either on loss or any of the other issues? None here. Okay, none here. I'm fine. If not, we would ask you to affirm the judgment of the district court. Thank you. Thank you. If it pleases the court again, I'm going to be very brief, and we actually may end up doing this argument in less than the allotted time. That would be a first. Yes. Specifically for the testimony with regard to the two wheelchairs, the agent specifically testified only two of the needed power chairs, he said two out of the 14. Why did you say that, question by the prosecution, answer by the defense? Because I personally observed the beneficiaries, I spoke with them, I visited their houses, I looked at the paperwork. The government agent, on those two claims, out of those 14 claims, he reviewed all of the things necessary for whether or not a prescription was fraudulent, and he found that two of the 14 were legitimate. If you extrapolate that percentage, as I did in the brief, it's going to lower the amount. So, I'm going to assume I'm following your argument, just for purposes of your argument. Your client received a 14-level increase for the loss amount, and that was because it exceeded 550,000, but did not exceed 1.5 million. So you're saying the amount of legitimate, medically necessary wheelchairs would be, if we valued that, would be less than 550,000? Yes, I believe the figure is $527,000. And so, how did you calculate that? I took the percentage of valid prescriptions versus invalid, that two out of the 14 were valid, I took that percentage times the $615,000, and after calculating that percentage, I got  $7,413.22, and that's it, footnote 50 on page 36 of the opening brief. Counsel, Judge Gould, can I ask you a question, please? How do you answer the government's argument, at least as I understood it, that even if a couple of wheelchairs were really sold to legitimate purchasers, that your client was not a properly certified supplier because the whole setup was a fraud? Well, I think that, number one, he had to be properly certified in the sense of certification because he received the certification. There's no question, and I'm not arguing, that the prosecution didn't introduce evidence of fraud and that they don't have sufficient evidence to justify a conviction. I'm not arguing that. What I'm saying is that with regard to the loss that occurred in this place, they have not shown that the actual or intended loss, which the judge found to be the same amount, were what probation initially assumed because probation operated under the assumption that all prescriptions were fraudulent. And I think that that was because the government assumed that all the prescriptions were fraudulent because they perhaps overlooked the testimony of the agent at trial that I've just read to the court. Well, was there any testimony in the trial specifically as to the amounts of these two invoices, given that you're just making a calculation? I am making a calculation, and I understand through cases of the court that that's an appropriate extrapolation, is appropriate. And I believe that there was a supplemental authority filed this week that cites that case. I believe, actually, it was a Judge Wardlock case that says it's appropriate to extrapolate the amount of loss based upon percentage. So that is what I am. If there's no other questions, this is going to be a first for everyone. All right. Thank you, counsel. Thank you. U.S. v. Chernovsky is submitted.
judges: Wardlaw, Gould, Rogers